UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VERNON VASSELL,<br>    *Petitioner*,<br><br>v.<br><br>WARDEN, STATE PRISON; WILLIAM<br>TONG, ATTORNEY GENERAL,<br>    *Respondents*. | )   3:19-CV-1956 (SVN)<br>)<br>)<br>)<br>)<br>)<br>)   April 11, 2022<br>) |

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

Sarala V. Nagala, United States District Judge.

      Petitioner Vernon Vassell brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his Connecticut state court conviction for murder, for which he is serving a sixty-year sentence. Specifically, he contends that the prosecutor at his criminal trial did not disclose to the defense the prosecutor's alleged promise to a witness that the prosecutor would notify another prosecutor handling a different case against the witness of the witness's cooperation in Petitioner's murder trial. *See* Petition, ECF No. 1. Petitioner argues this alleged action violated *Brady v. Maryland*, 378 U.S. 83 (1963). In addition, the Court construes the petition as also challenging the prosecutor's failure to disclose a separate alleged promise by the prosecutor to the witness that the witness's pending criminal charges would be resolved by *nolle prosequi* as a consequence of the witness's testimony in Petitioner's criminal trial. Respondents urge the Court to deny the petition because the first of these grounds was not exhausted in the state courts and because the state habeas court decision addressing the second ground was not contrary to, or an unreasonable application of, clearly established federal law. For the reasons described below, the Court agrees with Respondents. The petition is thus DENIED.

I.       **FACTUAL & PROCEDURAL BACKGROUND**

The following facts were set forth by the Connecticut Appellate Court in Petitioner's direct appeal. On May 26, 1997, Petitioner arrived at a picnic at a house in Bridgeport, Connecticut. *State v. Vassell*, 79 Conn. App. 843, 844 (2003), *cert. denied as untimely*, 330 Conn. 935 (2018). Various people were at the house, including, as relevant to this petition, Eric Wells and Marcus Colbert. *Id.* As an argument developed, Petitioner "drew a semiautomatic pistol from his waistband and fired multiple times," injuring Colbert, then fled the scene. *Id.* Colbert was transported to a hospital, where he subsequently died of multiple gunshot wounds, and at least one other individual was injured. *Id.*

Petitioner was charged with murder, in violation of Conn. Gen. Stat. § 53a-54a(a). *Id.* During Petitioner's criminal trial, the state produced three eyewitnesses, including Wells, who identified Petitioner as the shooter. *Id.* at 846. At the time of the trial, Wells was facing an unrelated misdemeanor charge for failing to appear in the second degree, which was pending in a different state court in Connecticut.

Following the jury's guilty verdict, Petitioner was convicted and sentenced to sixty years' imprisonment. *Id.* at 844; *State v. Vassell*, No. CR99150503, 2006 WL 3290300, at *1 (Conn. Super. Ct. Oct. 25, 2006). On direct appeal, the Connecticut Appellate Court rejected his claim of insufficient evidence and affirmed his conviction. *State v. Vassell*, 79 Conn. App. at 846. The Connecticut Supreme Court subsequently denied Petitioner's untimely appeal of the Connecticut Appellate Court's decision. *State v. Vassell*, 330 Conn. 935 (2018). Petitioner filed an application for sentence review pursuant to Conn. Gen. Stat. § 51-194 *et seq.*, and the Sentence Review Division of the Connecticut trial court affirmed the sentence. *State v. Vassell*, 2006 WL 3290300, at *1.

Petitioner filed his first petition for a writ of habeas corpus in state court, contending that his criminal trial counsel was unconstitutionally ineffective by failing to present exculpatory testimony by two additional witnesses. *Vassell v. Comm'r of Corr.*, No. CV054000672, 2010 WL 654488, at *3 (Conn. Super. Ct. Jan. 14, 2010). Following a trial on the merits, the state habeas court denied relief. *Id.* at *4. The Connecticut Appellate Court dismissed his appeal, 128 Conn. App. 904 (2011), and the Connecticut Supreme Court denied discretionary review, 301 Conn. 932 (2011). Petitioner then filed his second petition for a writ of habeas corpus in state court, contending that counsel for his first state habeas was unconstitutionally ineffective and that he is actually innocent. *Vassell v. Warden*, No. CV124004387S, 2014 WL 5472090, at *1 (Conn. Super. Ct. Sept. 24, 2014). Following a trial on the merits, the state habeas court denied relief. *Id.* at *6. The Connecticut Appellate Court affirmed. 162 Conn. App. 903 (2016).

Petitioner then filed his third petition for a writ of habeas corpus in state court. *Vassell v. Warden*, No. CV154006844S, 2018 WL 2418734, at *1 (Conn. Super. Ct. May 9, 2018) ("Third State Habeas Ruling"). Petitioner ultimately claimed that he was denied due process of law based on a *Brady* violation committed by the prosecutor during his criminal trial. *Id.* Specifically, Petitioner contended that Assistant State's Attorney Joseph Corradino, who prosecuted Petitioner's criminal case, had "an understanding" with Eric Wells that, in return for Wells' testimony as a witness in Petitioner's murder trial, the state would resolve unrelated misdemeanor charges pending against Wells in another division of the Connecticut Superior Court by *nolle prosequi* ("nolle"). *Id.* at *2. Petitioner further contended that those misdemeanor charges were indeed nolle'd about one week after Wells' testimony in Petitioner's murder trial. *Id.* Because

3

this impeachment evidence was not disclosed to Petitioner's criminal trial counsel or the jury, Petitioner maintained that he was denied due process of law in violation of *Brady*, 378 U.S. at 83.[1]

Attorney Corradino testified at the third state habeas trial. The state habeas court summarized his testimony as establishing that "the only promises made to Wells concerning his expected truthful testimony was to recommend that Wells be released on his promise to appear and that Attorney Corradino would inform the [prosecutor handling Wells' charges] about Wells' cooperation" in Petitioner's murder trial. Third State Habeas Ruling, 2018 WL 2418734, at *2. The state habeas court found "credible and accurate" Attorney Corradino's testimony, in which he denied that any promise was conveyed to Wells that Wells' outstanding charges would be nolle'd. *Id.* The court concluded that Petitioner failed to sustain his burden of proof of showing "that exculpatory material regarding Wells' cooperation with the state was withheld by the government from the defense." *Id.* The state habeas court further noted that, as observed by the Connecticut Appellate Court on direct appeal, there was ample evidence to support the jury's verdict and therefore Petitioner had failed to establish prejudice, as required for a cognizable *Brady* violation. *Id.* at *3. The Connecticut Appellate Court dismissed Petitioner's appeal, 190 Conn. App. 903 (2019), and the Connecticut Supreme Court denied discretionary review, 333 Conn. 911 (2019).

In December of 2019, Petitioner filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court ordered Respondents to file a response to address the question of timeliness and show cause why habeas relief should not be granted. ECF No. 6.

---

[1] None of the counsel who represented Petitioner on direct appeal, his first state habeas, or his second status habeas raised this *Brady* claim. ECF No. 16-3 at 93. Accordingly, Petitioner's third state habeas petition was "a habeas on a habeas on a habeas action," arising from his first habeas counsel's failure to plead the *Brady* claim and his second habeas counsel's failure to plead unconstitutionally ineffective assistance of counsel with respect to his first habeas counsel. Third State Habeas Ruling, 2018 WL 2418734, at *1.

4

Respondents' response, filed in December of 2021, concedes that the present habeas petition is timely. Petitioner did not file a reply to the response.[2]

Respondents urge the Court to deny the petition for two reasons. First, with respect to the particular *Brady* claim raised in the present petition regarding Attorney Corradino's undisclosed promise to "notify" the prosecutor handling Wells' pending misdemeanor charges of Wells' cooperative testimony, Respondents contend that Petitioner has not exhausted his available state court remedies. Second, with respect to the similar but distinct *Brady* claim adjudicated by the third state habeas court, regarding an alleged, undisclosed promise by Attorney Corradino to dismiss Wells' pending misdemeanor charges in exchange for his testimony, Respondents contend that federal habeas relief is not warranted on the merits. The Court considers each argument in turn.

## II.     ALLEGED AGREEMENT TO "NOTIFY" OTHER PROSECUTOR OF COOPERATION

### A. Legal Standard: Exhaustion

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). That statute provides that a federal court cannot grant habeas relief unless "(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1).

---

[2] Reply memoranda are not required and the absence of a reply memorandum will not prejudice the moving party. D. Conn. L.R. 7(d).

5

"The exhaustion doctrine recognizes that state courts, no less than federal courts, are bound to safeguard the federal rights of state criminal defendants." *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Thus, "[t]he exhaustion requirement . . . serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). *See also Picard v. Connor*, 404 U.S. 270, 275 (1971) (noting that the purpose of the exhaustion doctrine is "to prevent unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution" (citation and internal quotation marks omitted)). "To provide the State with the necessary 'opportunity,' [to pass upon and correct an alleged violation of its prisoner's federal rights] the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted); *see also Picard*, 404 U.S. at 275 ("We emphasize that the federal claim must be fairly presented to the state courts.").

"In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye*, 696 F.2d at 191. This requirement encompasses both the "essential factual allegations" and the "legal doctrine" underlying the federal habeas claim, because the state court could not have had a "fair opportunity to rule of the claim" if "material factual allegations were omitted" from the state proceeding, or "if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 191–92. With respect to the legal basis of the petitioner's claim, the state court had "a reasonable opportunity to pass on the federal habeas claim" if the legal basis of the state claim "was the

'substantial equivalent' of that of the [federal] habeas claim." *Id.* at 192 (citing *Picard*, 404 U.S. at 278). However, a petitioner's claim that a particular constitutional right was violated in one instance "does not serve to alert [the state court] to a contention that another constitutional violation also occurred." *Daye*, 696 F.2d at 193 n.6 (citing *Picard*, 404 U.S. at 277 (holding that the habeas petitioner's prior challenge to his indictment under the Fifth Amendment to the U.S. Constitution in the state court proceeding did not exhaust his federal claim that the indictment denied him equal protection in violation of the Fourteenth Amendment)).

B. Discussion

The present petition frames the issue as follows: Attorney Corradino "promised Eric Wells to notify the prosecutor handling his pending Case in a different Court of his Cooperation in my Murder Trial. The defense or Jury was unaware of this promise." ECF No. 1 at 5. This claim is slightly different from that presented in Petitioner's third state habeas proceeding, which centered on Attorney Corradino's alleged promise to Wells that Wells would receive a favorable disposition in the pending misdemeanor case if he testified in Petitioner's trial.

Specifically, the state habeas court characterized Petitioner's claim as asserting that the non-disclosure of the following exculpatory information regarding Wells violated *Brady*: "that, at the time of [Wells'] testimony, the state and Wells had an understanding that the state would nolle charges Wells faced in [an unrelated case]." Third State Habeas Ruling, 2018 WL 2418734, at *2. The state habeas court then reasoned that Petitioner failed to demonstrate a *Brady* violation because Attorney Corradino credibly "denied that any promise was conveyed to Wells that his [unrelated] charges would be nolle'd." *Id.* On appeal, Petitioner urged the Connecticut Appellate Court to reverse the determination of the state habeas court because "[n]either Wells nor [Attorney Corradino] revealed to Petitioner or his counsel that Wells was testifying in exchange for a

7

favorable disposition of Wells' pending criminal charges in another courthouse." ECF No. 16-3 at 8.[3] In sum, Petitioner's state court proceeding centered on an alleged *Brady* violation arising from the failure to disclose a cooperation agreement between Wells and Attorney Corradino regarding the favorable *disposition* of Wells' pending misdemeanor charges.

Petitioner's present federal habeas petition, however, centers on an alleged *Brady* violation arising from the failure to disclose an agreement under which Attorney Corradino allegedly promised to "*notify*" the prosecutor handling Wells' misdemeanor charges of Wells' cooperation. ECF No. 1 at 5. Although Attorney Corradino's testimony at the habeas trial discussed his agreement to notify the prosecutor handling Wells' pending charges of Wells' cooperative testimony—which Petitioner in this action claims violated *Brady*—Petitioner did not apprise the state habeas court of any claim that an agreement by Corradino to notify the other prosecutor of Wells' cooperation violated *Brady*.

In other words, Petitioner's third state habeas *Brady* claim did not effectively "alert" the state habeas court to his contention that another *Brady* violation also occurred because the bases of the two *Brady* violations are distinct: one concerns a favorable disposition and the other concerns mere notification of cooperation. *See Daye*, 696 F.2d at 193 n.6. Moreover, this Court "cannot fault [the state habeas court] for failing also to consider *sua sponte* whether" Attorney Corradino's undisclosed promise to "notify" the prosecutor handling Wells' charges of the cooperative testimony violated *Brady* when that question was not "the substantial equivalent" of the claim actually raised in the state habeas proceeding. *See Picard*, 404 U.S. at 277–78. Accordingly, the "substance" of the *Brady* violation raised in Petitioner's federal habeas petition was not fairly presented to the state habeas court. *See id.* at 278. In addition, Petitioner has not

---

[3] Respondents characterize this as a broadening of the claim Petitioner made before the third state habeas court.

contended that state habeas proceedings are somehow unavailable or ineffective to protect his constitutional rights. *See* 28 U.S.C. § 2254(b)(1). Thus, the Court concludes that Petitioner has not exhausted his available state court remedies as to this claim and denies the petition.

### III. ALLEGED AGREEMENT WITH WITNESS FOR FAVORABLE DISPOSITION OF PENDING CASE IN EXCHANGE FOR COOPERATION

A. <u>Legal Standard</u>

*1. AEDPA*

The Court also construes the Petition as seeking review of the state habeas court's substantive conclusions that, first, there was no cooperation agreement between Attorney Corradino and Wells regarding the disposition of Wells' pending misdemeanor charges and, second, that any nondisclosure of such cooperation agreement was not material. Third State Habeas Ruling, 2018 WL 2418734, at *2–3. Where a state court has adjudicated the merits of the petitioner's § 2254 claim, federal habeas relief may not be granted "unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the U.S. Supreme Court] . . . or that it 'involved an unreasonable application of' such law[.]" *Harrington*, 562 U.S. at 100 (citing § 2254(d)(1)).

Section 2254(d)(1) thus provides two distinct avenues for federal habeas relief. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). First, a petitioner may obtain federal habeas relief if the state court decision was "*contrary to*" clearly established federal law—for example, "if the state court applies a rule that *contradicts* the governing law set forth" by the U.S. Supreme Court, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the U.S. Supreme Court] and nevertheless arrives at a result different from [that] precedent." *Id.* at 405–06 (emphasis added). *See also Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002) ("A decision

is 'contrary to' clearly established federal law as determined by the Supreme Court 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" (quoting *Williams*, 529 U.S. at 412)).

Second, a petitioner may obtain federal habeas relief if the state court decision "correctly identifie[d] the governing legal rule but applie[d] it unreasonably to the facts of a particular petitioner's case[.]" *Williams*, 529 U.S. at 407–08. "In order for a state court's decision to be an unreasonable application of this Court's law, the ruling must be objectively unreasonable, not merely wrong. . . . In other words, a litigant must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (citations and internal quotation marks omitted). The U.S. Supreme Court has explained that § 2254(d)(1) presents a "difficult standard to meet." *Id. See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (noting that the standard of an unreasonable application of federal law set forth in § 2254(d)(1) presents "a substantially higher threshold" than a determination that the state court's determination was merely "incorrect").

To determine whether the state court decision was contrary to, or an unreasonable application of, clearly established federal law, the federal habeas court must first define the relevant federal law. *See Kennaugh*, 289 F.3d at 42 ("The threshold inquiry under AEDPA is whether the petitioner 'seeks to apply a rule of law that was clearly established at the time his state-court conviction became final.'" (quoting *Williams*, 529 U.S. at 390)). "For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the U.S. Supreme Court] refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-

court decision." *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004) (internal quotation marks omitted) (quoting *Williams*, 529 U.S. at 412). Clearly established federal law, "as defined by the Supreme Court, may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh*, 289 F.3d at 42.

### 2. *Brady v. Maryland*, 373 U.S. 83 (1963)

Relevant here, it has been clearly established that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "Under *Brady* and its progeny, the government has a due process obligation to disclose to the defendant its knowledge of material evidence favorable to the defendant either because it is exculpatory or because it can serve to impeach a key witness." *Shabazz v. Artuz*, 336 F.3d 154, 161–62 (2d Cir. 2003) (citing *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Regarding the first component, "evidence that is useful for impeachment, *i.e.*, having the potential to alter the jury's assessment of the credibility of a significant prosecution witness," falls within *Brady*'s disclosure requirements. *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (citing *Giglio v. United States*, 405 U.S. 150, 154–55 (1972)). "Impeachment evidence includes promises that the prosecution makes to key witnesses in exchange for their testimony." *Shabazz*, 336 F.3d at 162 (citing *Giglio*, 405 U.S. at 154–55). The question of "[w]hether

11

cooperation agreements exist between the prosecution and its witnesses is a factual determination." *Id.* at 161. A federal habeas court must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473–74 (citing 28 U.S.C. § 2254(e)(1)). "This presumption of correctness is particularly important when reviewing the [state] trial court's assessment of witness credibility." *Shabazz*, 336 F.3d at 161.

Turning to the third component of a *Brady* violation, the U.S. Supreme Court has instructed that the "touchstone of materiality is a 'reasonable probability' of a different result. . . . The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

Undisclosed impeachment evidence may be considered material only in particular circumstances, such as "where the witness in question supplied the only evidence linking the defendant to the crime" or "where the witness supplied the only evidence of an essential element of the offense." *Avellino*, 136 F.3d at 256–57 (citing *Giglio*, 405 U.S. at 154–55). This is because impeachment evidence, while "possibly useful to the defense," is not always "likely to have changed the verdict." *Giglio*, 405 U.S. at 154 (citation and internal quotation marks omitted). For example, as the Second Circuit has noted, undisclosed impeachment evidence "may be cumulative, and hence not material" where the evidence impeaches a witness whose credibility had already been attacked or where the witness likely did not play a decisive role in the jury's weighing of evidence. *See Avellino*, 136 F.3d at 257.

B. Discussion

As noted, the state habeas court concluded, first, that there was no cooperation agreement between Attorney Corradino and Wells regarding the disposition of Wells' pending misdemeanor charges and, second, that any nondisclosure of such cooperation agreement was not material. Third State Habeas Ruling, 2018 WL 2418734, at *2–3. This Court cannot determine that either conclusion was contrary to, or an unreasonable application of, clearly established federal law.

First, the question of whether there was a cooperation agreement between Attorney Corradino and Wells is a factual determination that is entitled to a presumption of correctness. *See Shabazz*, 336 F.3d at 161. A factual finding of the state court cannot be disturbed unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The presumption of correctness is "particularly important when reviewing the trial court's assessment of witness credibility." *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003).

The state habeas court found Attorney Corradino's testimony, particularly his denial that "any promise was conveyed to Wells that his [unrelated pending] charged would be nolle'd" if he testified against Petitioner at his murder trial, "credible and accurate." *Id.* at *2. Specifically, Attorney Corradino testified that, "customarily," he "would not have an agreement about the disposition of someone's criminal offenses if they were to be a witness" in another trial because of the potential for the witness to refuse or "change their story" at the last moment. ECF No. 16-1 at 48. Rather, he would "notify the prosecutor who [wa]s handling the matter against the witness that the witness had come in and testified for the state" after the testimony had been given. *Id.*; *see also id.* at 50–51 (testifying that "[i]t was [his] general practice to say that [the witness] should take the stand, testify truthfully, and that their cooperation would be called to the attention of the prosecutor in the [c]ourt who had responsibility for their matter"). Attorney Corradino further

13

testified that this was "certainly the custom and practice" of prosecutors in the court where he prosecuted Petitioner's murder charge. *Id.* at 56.

With respect to Wells' unrelated misdemeanor charges, Attorney Corradino testified that, prior to Petitioner's criminal trial, he "went on the record" at Wells' bond hearing and stated that Wells would be cooperating with Attorney Corradino by testifying in Petitioner's trial, and as a result the trial court judge released Wells on his promise to appear. *Id.* at 48.[4] Attorney Corradino further testified that Wells' release on a promise to appear was discussed on his direct examination of Wells at Petitioner's trial. *Id*. at 49. Attorney Corradino testified that the subsequent nolle of Wells' misdemeanor charges "would have been the result of the discretion of the prosecutor handling those matters based on a communication . . . that Wells had come and cooperated and testified consistently with . . . the information that he had provided to the police." *Id.* Although, Attorney Corradino could not remember anything specific about Wells' charges given the intervening length of time, Attorney Corradino reiterated that "it had been consistently [his] practice not to . . . make any affirmative representation about the outcome [of a witness' pending criminal charges] prior to any testimony." *Id.* at 50. According to Attorney Corradino's habeas testimony, the nolle of Wells' misdemeanor charge was a matter of discretion for the prosecutor handling that charge. *Id.* at 49–50.

Petitioner has not provided clear and convincing evidence to rebut the presumption of correctness afforded to the state habeas court's factual finding that Attorney Corradino had not agreed to nolle Wells' pending case in exchange for his testimony, and the Court has found none

---

[4] Attorney Corradino's habeas trial testimony is supported by Petitioner's criminal trial transcript, in which, during the direct examination of Wells, Attorney Corradino asked Wells if Attorney Corradino had represented to Wells that the government "would ask the judge to change [Wells'] bail bond from five hundred dollars to a promise to appear," and Wells answered in the affirmative. Wells also confirmed that the judge had done so earlier that morning. ECF No. 16-11 at 23. Thus, the jury was informed that Attorney Corradino had provided a benefit to Wells, in the form of a request to the judge to reduce Wells' bond, which could have given Wells an incentive to testify in a manner favorable to the state.

14

in the record. 28 U.S.C. § 2254(e)(1). The only notable evidence Petitioner raised at his third state habeas trial to suggest an agreement between Wells and Attorney Corradino regarding the disposition of Wells' misdemeanor charge was circumstantial evidence of Wells' subjective belief. Specifically, Wells attended a plea and sentencing hearing on his misdemeanor charge approximately one week after testifying at Petitioner's murder trial and one day after the jury returned a guilty verdict. ECF No. 16-17. At Wells' hearing, the court noted that there was "some confusion in the State's Attorney's Office," which delayed the proceeding while the prosecutor handling the charges attempted to contact Attorney Corradino. *Id.* at 5. In apparent frustration, Wells said: "Your Honor, I thought this here was supposed to be finished today because I live in Rhode Island and it's hard for me to come back and forth. They told me this was supposed to be finished today." *Id.* After a recess, the prosecutor entered a nolle on the charges. *Id.* at 6. In his brief following the presentation of evidence in his third habeas trial, Petitioner argued that Wells' statement "clearly" referred to "his belief that there was an advance agreement that he was going to receive the nolle'd dispositions," buttressed by the prosecutor's decision to nolle the charges only after speaking with Attorney Corradino off the record. ECF No. 16-3 at 84.

The state habeas court, however, was not persuaded by that argument, and this Court is not persuaded either. At most, Wells' statement represents his frustration with the pendency of the misdemeanor charges and his subjective belief that the charges would be nolle'd that day. Wells identified the promisor as only "they," which is non-specific and does not clearly and convincingly demonstrate the existence of a cooperation agreement between him and Attorney Corradino regarding the disposition of the charges. Neither Wells nor the prosecutor handling the charges testified at the state habeas trial, and Attorney Corradino repeatedly disavowed that he made Wells any such promise.

15

Likewise, the off-the-record communication between Attorney Corradino and the prosecutor handling Wells' charges does not clearly and convincingly establish any promise by Attorney Corradino regarding the outcome of those charges. Rather, the communication is at least consistent with Attorney Corradino's testimony that he would have "notif[ied] the prosecutor who [wa]s handling the matter against the witness that the witness had come in and testified for the state" after the testimony had been given. ECF No. 16-1 at 48. Nothing about the communication undermines Attorney Corradino's testimony that the ultimate disposition of Wells' pending charges was left to the discretion of the prosecutor handling those charges. *See id.* at 49.

Accordingly, Petitioner has not raised clear and convincing evidence to rebut the presumption of correctness regarding the state habeas court's factual finding that there was no undisclosed cooperation agreement between Wells and the prosecution regarding the outcome of Wells' pending misdemeanor charges. This alone justifies the Court's conclusion that Petitioner has not established a necessary element of a *Brady* violation and thus is not entitled to federal habeas relief.

Nevertheless, even if there were a cooperation agreement between Wells and Attorney Corradino regarding the outcome of Wells' pending misdemeanor charges, Petitioner still would not be entitled to federal habeas relief. The state habeas court did not reach the second element of a *Brady* violation, which pertains to whether the favorable evidence was suppressed by the government, since it found that there was no agreement in the first place. Turning to the third element of a *Brady* violation, materiality, the state habeas court determined that any *Brady* violation was not material in light of the volume and quality of the evidence presented at Petitioner's criminal trial. Specifically, the state habeas court referenced the Connecticut

16

Appellate Court's conclusion on direct appeal that there was sufficient evidence to sustain Petitioner's conviction:

> There was ample evidence to support the jury's verdict. The state produced eyewitnesses Wells, [Terry] Perkins and [James] Harris, each of whom testified that the defendant was present at the scene and was the shooter. The testimony of . . . a tool marks and firearms examination expert, supported the testimony of Wells, Harris and Perkins regarding the number of gunshots fired and the existence of only one shooter. In addition, [an] associate state medical examiner . . . testified that the victim had died from multiple gunshot wounds[.]

Third State Habeas Ruling, 2018 WL 2418734 at *3 (quoting *State v. Vassell*, 79 Conn. App. at 846). In other words, the state habeas court determined that the nondisclosure of any cooperation agreement was not material. That determination was neither contrary to, nor an unreasonable application of, clearly established federal law.

Specifically, the state habeas court's decision is not an objectively unreasonable application of *Brady* and its progeny. The factors that the U.S. Supreme Court has emphasized in finding a material *Brady* violation are notably absent here. For example, this case is distinct from *Banks v. Dretke*, 540 U.S. 668 (2004), in which a *Brady* violation was material because: a key witness for the prosecution was a paid informant but testified falsely that he was not; the witness provided evidence as to the petitioner's propensity for violence, which was "crucial" in light of the petitioner's lack of prior criminal record; and the witness had not meaningfully been impeached because the impeachment witnesses had themselves been impeached. *Id.* at 699–702. Here, evidence of a cooperation agreement would have impeached Wells' credibility, but not enough to reasonably "put the whole case in such a different light as to undermine confidence in the verdict," as in *Banks*. *See id.* at 698 (internal quotation marks omitted) (quoting *Kyles*, 514 U.S. at 435). Wells was not a paid informant, nor does Petitioner contend that he untruthfully answered any questions about the extent of his cooperation with the prosecution. Indeed, Wells' credibility had

17

been impeached already by his truthful testimony regarding his felony record, his pending misdemeanor charge, and the benefit he received when Attorney Corradino agreed to seek reduction of his bond on the pending charge, all of which was disclosed to the jury. *See* ECF No. 16-1 at 48–49; ECF No. 16-11 at 20–21, 23 (direct examination testimony at trial), 56–57 (cross-examination testimony at trial); *see also Avellino*, 136 F.3d at 257 (undisclosed evidence more likely to be material when it "would have provided the only significant basis for impeachment").

Moreover, as noted by the state habeas court and the Connecticut Appellate Court, the testimony supplied by Wells was also provided by two other eyewitnesses. This distinguishes the present case from *Giglio*, in which the state's case "depended almost entirely on" one unimpeached witness's testimony, whose credibility was crucial. *Giglio*, 405 U.S. at 154–55 (holding that the *Brady* violation was material); *see also Avellino*, 136 F.3d at 256 ("evidence whose function is impeachment may be considered to be material where the witness in question supplied the only evidence linking the defendant to the crime" or the only evidence of an essential element of the offense). Likewise, the testimony of all three eyewitnesses was corroborated by two forensic expert witnesses, and, unlike in *Kyles*, further impeachment of Wells would not have put that forensic evidence in doubt. *Kyles*, 514 U.S. at 451 (holding that the *Brady* violation was material, in part, because the undisclosed statements would have allowed a jury to infer that certain forensic evidence had been planted).

Instead, this case is more similar to *Strickler*, in which the U.S. Supreme Court concluded that any *Brady* violation was not material. *Strickler*, 527 U.S. at 292–93. In that case, the testimony of the witness at issue "was not the only evidence that the jury had before it," because two other eyewitnesses placed the petitioner at the scene and "considerable forensic and other physical evidence link[ed] [the] petitioner to the crime." *Id.* at 293. Likewise, and as noted, Wells'

18

testimony "was not the only evidence that the jury had before it" because two other eyewitnesses identified Petitioner as the shooter and because there was forensic evidence corroborating their testimony and linking Petitioner to the crime. As in *Strickler*, this record "provides strong support for the conclusion that [P]etitioner would have been convicted . . . even if [Wells] had been [further] impeached." *See id.* at 294.

Against this landscape of clearly established U.S. Supreme Court law, the state habeas court concluded that there was no "'reasonable probability' of a different result," even if Wells had been impeached. *See id.*; *Kyles*, 514 U.S. 434. The state habeas court's application of federal law was not contradictory or objectively unreasonable. Moreover, Petitioner has not raised, and the Court has not found, a case involving "materially indistinguishable" facts in which the U.S. Supreme Court "arrive[d] at a different result" from the state habeas court in this case. *See Williams*, 529 U.S. at 406. Accordingly, the Court concludes that Petitioner is not entitled to federal habeas relief, and his petition is denied.

## IV. CONCLUSION

Because Petitioner has not exhausted his state court remedies with respect to any alleged, undisclosed promise by Attorney Corradino to "notify" the prosecutor handling the witness's pending misdemeanor charges of the witness's cooperation in violation of *Brady*, the Petition for a Writ of Habeas Corpus, ECF No. 1, is DENIED on that ground. In addition, because Petitioner fails to establish that the state habeas court contradicted or unreasonably applied federal law in determining that he had not demonstrated a *Brady* violation with respect to any undisclosed agreement to favorably resolve the witness's pending misdemeanor charges, the Petition is

DENIED on that ground as well. The Clerk is directed to enter judgment in favor of Respondents and close the case.

**SO ORDERED** at Hartford, Connecticut, this 11th day of April, 2022.

                                       */s/ Sarala V. Nagala*
                                       SARALA V. NAGALA
                                       UNITED STATES DISTRICT JUDGE